## PATTON PAINT CO. v. LLOYD.

### (Circuit Court of Appeals, Third Circuit. November 8, 1907.)

#### No. 61.

CONTRACTS—ACTION FOR BREACH—PROOF OF BREACH.

Defendant and others, as members of a syndicate, contemplating the formation of a corporation to sell an enamel paint, entered into a contract with plaintiff to manufacture the same. The contract recited that it was assumed that the product could be made with the plant and equipment then in use by plaintiff, but provided that, if the development of the business showed that additional equipment and machinery were required, the members of the syndicate should provide satisfactory security for the necessary outlay. After the enamel company was formed and the syndicate merged therein, it was found that a new plant would be required to make the enamel, and plaintiff entered into a contract with the company to erect the plant at the company's cost. *Held,* that the money expended in such erection was not under the syndicate contract, but under that with the corporation, and that defendant could not be held liable therefor.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Gordon & Smith, for plaintiff in error.
Lazier & Orr, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and LANNING, District Judge.

BUFFINGTON, Circuit Judge. This is a writ of error to the Circuit Court for the Western District of Pennsylvania. In that court the Patton Paint Company, hereafter styled "plaintiff," brought suit against William F. Lloyd, to recover some $18,000, alleged to be due it by virtue of a contract it made with Lloyd, the defendant, and four others. The court below gave binding instructions for Lloyd, and, on entry of judgment in his favor, plaintiff sued out this writ.

After careful examination of the case, we are of opinion no error was committed by the court below. The contract of July 24, 1902, between the Patton Paint Company and Lloyd and others, provided for the manufacture by that company of a certain enamel, and it was assumed by all parties it could and would be made in one of the plants of the Patton Paint Company. "It is assumed," the contract provides, "that this product can be manufactured with our present equipment and organization, except as to additional labor to produce the same." The subsequent provision of the contract, viz.—"If the development of the plan indicates that we will require additional facilities and machineries, then the members of the syndicate shall provide satisfactory security or indemnity for such outlay, and shall provide in a satisfactory manner for reimbursement to us for the same"—is to be construed in the light of this assumption and of the fact that the formula for making the paint was not then known to the contracting parties. It was assumed the plaintiff's present plants could make the paint. If this assumption necessitated outlay for additional facilities and machinery to and for the then plants of the company, the expense thereof was to be secured and indemnified by Lloyd and his associates. But the con-

tract made no provision for the contingency that did arise when the formula became known, viz., the necessity of erecting a new factory. The court below we think rightly held the erection of such a new plant was not contemplated by the contract or covered by its provisions. Such being the case, it followed Lloyd could not be held for the price of such plant, unless he bound himself by some other or additional contract than that of July 24, 1902, and such a subsequent contract by Lloyd the plaintiff sought to establish. In its statement of claim it alleged that:

"In or about the months of August or September, 1902, the plaintiff, at the request of said syndicate, commenced the erection of a plant, for the purpose of carrying out said contract, in and upon a certain leasehold acquired by it in the city of Milwaukee and state of Wisconsin, and it was agreed between the plaintiff and the said syndicate, particularly the said William F. Lloyd, one of the members of said syndicate, that the cost and outlay by the plaintiff in the construction and equipment of said plant should be reimbursed by the said syndicate to the plaintiff in each month for the expenditures made during the preceding month."

But on the trial no such alleged understanding by Lloyd was proved. Not only was it shown that the work was done by plaintiff under a written contract with the Van Hoof Enamel Company, a corporation of which this syndicate had become members, but the proof is unquestioned that Lloyd made no contract subsequent to July 24th. In that regard, the testimony was:

"Q. Now, Mr. Patton, did Mr. Lloyd ever promise to pay the expense of constructing that plant? A. Mr. Lloyd? Q. Yes. A. Ever make any promise after the date of this contract? Q. Yes; did they ever at any time in any way make any other agreement with you personally than as appears in the contract of July 24th? A. I don't remember that he ever promised it; no. Q. No other contract with Mr. Lloyd individually than the contract of July 24, 1902? A. That is the only contract I have."

Now, the contract of July 24th contemplated its acceptance by the thereafter to be incorporated Van Hoof Enamel Company. Such incorporation took place on July 28th, all rights under the contract were conveyed to it, and the formula was given to Humphreys, one of its directors, who was not a member of the syndicate. While such transfer did not release the individual members of the syndicate from any liability created by the contract, yet it does show that the syndicate was supplanted by the corporation, and Lloyd testified, without contradiction, that it went out of existence on July 28th, when the contemplated corporation was chartered. There is no testimony that the members of the syndicate as such thereafter met or made any contract. Any meetings at which they were subsequently present were directors' meetings of the Van Hoof Enamel Company. Under these conditions, the directors of that company met on September 10th and authorized the construction by the Patton Paint Company, at a price not to exceed $10,000, of a new plant in which to manufacture enamel. To pay said sum the five men who had constituted the syndicate agreed to each discount a note of the Van Hoof Enamel Company for $2,000. This offer of the Van Hoof Enamel Company for the new plant was accepted in writing by the Patton Paint Company, acting by its vice president, who had been present as a director at the meeting of the

Van Hoof Company noted. The work was proceeded with by the plaintiff under this authorization, and charged as it progressed to the Van Hoof Enamel Company. Under these proofs, facts, and writings —concerning all of which there is practically no dispute—no legal liability on the part of Lloyd existed to pay the expenditures incurred by the plaintiff in erecting the new building at the instance of the Van Hoof Company.

The judgment of the court below is therefore affirmed.

NOTE.—The following is the opinion of Acheson, Circuit Judge, in the court below:

ACHESON, Circuit Judge. At the conclusion of the trial of this case in May, 1904, I was of opinion that the plaintiff, under the uncontradicted evidence and the pleadings, could not recover, and that, for the reasons stated in the charge of the court, the jury should be instructed to return a verdict in favor of the defendant. Since the recent argument of the plaintiff's motion for a new trial I have carefully examined this record, and it is clear to me that the binding instructions for the defendant were correct. In charging the jury, it was my purpose to state the controlling facts which were uncontradicted, as explaining for the benefit of the parties the reasons which actuated the court. Having, then, thus set forth the material facts of the case in the charge of the court, I need not repeat them here, contenting myself with a brief restatement of the reasons why, in my judgment, the instructions to the jury were correct.

(1) Under the plaintiff's own proofs, the contract under which the expenditures sued for were made was a contract between the plaintiff and the Van Hoof Enamel Company, a corporation, and not the contract sued on of July 24, 1902, to which the defendant was a party. The plaintiff itself, also, for some months on its books charged that corporation with the first of these expenditures and rendered bills therefor to that corporation.

(2) The expenditures which are the subject of this suit were for an experimental plant. I find no warrant for any outlay for experimental purposes in the contract of July, 1902. Additional "facilities" and "machinery" were, indeed, contemplated by that contract. But the expenditures in question were not for additional facilities or machinery, but were for a plant purely experimental. Hence, I am unable to perceive how liability therefor can be imposed upon this individual defendant because of his contract with the plaintiff. Moreover, the plaintiff, by its letter of August 15, 1902 (which resulted in the contract with the Van Hoof Enamel Company), evidently did not treat the contract in suit (that of July 24, 1902) as warranting the expenditures proposed by that letter, which expenditures are sought to be recovered of this defendant, but the plaintiff specifically asked for authority for the outlay for the proposed experimental plant. Such authority, indeed, it received, not from the defendant, but from the Van Hoof Enamel Company.

(3) Even if this experimental plant could fairly be treated as an additional facility within the meaning of "Condition First" of the contract in suit, then surely such plant could not be thus regarded as a facility until completed. As long as incomplete, it was anything but a facility. That this experimental plant never was completed the uncontradicted evidence for the plaintiff itself clearly showed. Hence, the outlay by the plaintiff being abortive, there could not arise any liability on the part of the individual signers of the contract of July, 1902, to reimburse the plaintiff. For the same reason, no liability could accrue under "Condition Second" of the contract. The failure as a commercial success of the process of manufacture was a condition precedent to liability to reimburse the plaintiff for loss in connection with the project embodied in the contract in suit. Of course, while this experimental plant remained incomplete and inoperative, the question of success or failure could never be reached. I may add that the plaintiff, realizing the importance of the fact of the completion of this plant as a material element of its right of recovery, alleged completion, but the proofs on both sides were to the contrary.

The motion for a new trial is denied.